UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EDUARDO VARGAS-AVILA,
Plaintiff,
v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,
Defendant.

No. 1:15-cv-03045-SAB

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff Eduardo Vargas-Avila's Motion for Summary Judgment, ECF No. 13, and Defendant Commissioner of the Social Security Administration's Motion for Summary Judgment, ECF No. 16. The motions were heard without oral argument. Plaintiff is represented by D. James Tree, and Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Daphne Banay. For the reasons set forth below, the Court **grants** Plaintiff's motion, **denies** Defendant's motion, **reverses** the administrative law judge ("ALJ"), and **remands** for a determination of award of Social Security payments.

***Jurisdiction***

On May 16, 2011, Plaintiff filed an application for disability insurance benefits. Plaintiff alleges an onset date of March 28, 2006, or alternatively August 28, 2008, for various injuries discussed in detail below.

Plaintiff's application was denied initially and on reconsideration. On January 8, 2013, Plaintiff appeared and testified at a hearing held in Yakima, Washington before an ALJ. The ALJ issued a decision on May 23, 2013, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on January 16, 2015. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on August 5, 2014. The matter is before this Court under 42 U.S.C. § 405(g).

***Sequential Evaluation Process***

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 404.1574; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1571. If he is not, the ALJ

proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1508-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id.* At

step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

***Standard of Review***

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

***Statement of Facts***

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized

here. On March 28, 2006, Plaintiff Eduardo Vargas-Avila was injured in a car accident. His right leg was crushed, his head struck his car window, and he suffered injuries to his right shoulder, arm, leg, thigh, and foot. Dr. Larry Lefors diagnosed Plaintiff with contusions and strain/sprain of the right leg, radicular syndrome somatic dysfunction, right shoulder strain/sprain, and lumbar strain/sprain. Dr. Lefors continued to examine Plaintiff many times, and noted pain, daily headaches, and difficulties with memory.

In October 2007, Tedd Judd, Ph.D., a neuropsychologist, examined Plaintiff. He diagnosed a postconcussional disorder, resulting in various mental difficulties. He opined the injury was a result of injury to Plaintiff's dorsolateral frontal lobe.

Plaintiff was working as an independent mechanic at the time, and Dr. Judd indicated Plaintiff's work efficiency was halved by the accident. On August 19, 2008, Plaintiff began a new job as a mechanic. Ten days later, on August 29, 2008, a hop machine chain caught Plaintiff's left hand and caused severe injury, including the amputation of the third finger and deep lacerations of the fourth finger. The wound became infected. The injury has caused pain in both hands, numbness, and other symptoms.

The injury led to severe depression. Plaintiff also suffers from bilateral carpal tunnel syndrome. Dr. Lefors continued to treat Plaintiff for his new injuries, examining him over three dozen times. Dr. Lefors consistently found pain and limited use of Plaintiff's left hand, amongst other problems.

On July 8, 2009, Dr. Pablo Proano conducted a psychological evaluation of Plaintiff. Dr. Proano diagnosed Plaintiff with major depressive disorder, as a result of the injury Plaintiff suffered in August, 2008. Dr. Proano assigned a Global Assessment of Functioning ("GAF") Score of 41 to Plaintiff. Dr. Proano went on to examine Plaintiff over forty times between June, 2009 and December, 2012, and consistently found symptoms of depression.

Dr. Frederick Montgomery, a psychiatrist, examined Plaintiff in April, 2010. He found Plaintiff suffered from mood and anxiety disorder, related to a medical condition, with depressive symptoms, secondary to the hand injury.
Dr. Montgomery also indicated the possibility of malingering. Dr. Proano contested this possibility.

Dr. S. Daniel Seltzer and Dr. Voderbet Kamath conducted an examination of Plaintiff in April, 2010. They suggested the possibility of carpal tunnel syndrome, and recommended a test, which occurred on April 27, 2010. The nerve conduction study indicated bilateral carpal tunnel, which Dr. Seltzer and Dr. Kamath agreed with.

On October 14, 2010, Dr. Ronald Early conducted a consultative examination for the Plaintiff. Dr. Early found major depressive disorder, pain throughout Mr. Avila-Vargas' injured areas; and assigned a GAF Score of 45. He opined that Plaintiff would have difficulty finding work because he spoke no English, and could not use his upper left extremity.

Two other medical professionals examined Plaintiff in April, 2011. Dr. James Kopp found positive Tine's signs bilaterally, and that Plaintiff's carpal tunnel syndrome was unrelated to Plaintiff's injury. The same day, a psychiatrist, Dr. Richard Schneider, examined Plaintiff for twenty minutes, and found, without conducting any testing, that there were no psychiatric obstacles to Plaintiff's return to work. Dr. Proano disagreed with this finding, and in May, 2011, conducted a mental medical source statement, finding marked and extreme limitations on various aspects of Plaintiff's abilities. He reached the same conclusions again on September 12, 2011.

Dr. Early conducted a second psychological evaluation of Plaintiff on September 20, 2011. He found symptoms of depression, and that Plaintiff took no joy in social activities designed to help improve his condition. He diagnosed major depressive disorder, carpal tunnel syndrome, and pain, amongst other items.

Plaintiff's most recent findings continue to show limitations, both physical and psychological.

***The ALJ's Findings***

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 28, 2006. Tr. 26.

At step two, the ALJ found Plaintiff has the following severe impairments: diabetes; status post partial finger amputation and laceration in the left hand; and affective disorder (major depression) Tr. 268.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. Tr. 27.

The ALJ concluded that Plaintiff has the residual functional capacity to perform

> medium work as defined in 20 C.F.R. § 404.1567(c) except he is able [to] climb ladders, ropes, and scaffolds frequently; and he is able to handle and finger with his non-dominant left upper extremity frequently. He has the mental capacity to adequately perform the mental activities generally required by competitive, remunerative work as follows: he is able to understand, remember, and carry out simple instructions required of jobs classified at a specific vocational preparation level of 1, 2, or unskilled work; he is able to make judgments on simple work related decision [sic], respond appropriately to supervision and coworkers, and deal with changes all within a stable (not subject to sudden or extreme change or fluctuation) work environment; and he is able to have occasional contact with the general public."

//

Tr. 19. At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work. Tr. 36.

At step five, the ALJ found Plaintiff was not disabled on the basis that he could perform other work which exists in significant numbers in the national economy, including positions like automobile detailer, mail clerk, or laundry worker. Tr. 36-37.

## ***Issues for Review***

1. Whether the ALJ properly evaluated the medical opinion evidence of:

    a. Dr. Lefors;

    b. Dr. Proano;

    c. Dr. Early;

    d. Dr. Judd;

    e. and Dr. Stevick.

2. Whether the ALJ properly considered the medical evidence relating to Mr. Vargas-Avila's 2006 injury.

3. Whether the ALJ properly considered Mr. Vargas-Avila's symptom testimony.

## ***Discussion***

*1. Whether the ALJ Properly Evaluated the Medical Opinions of the Treating Medical Professionals.*

*A. Dr. Lefors.*

The ALJ afforded little weight to the opinion of a treating doctor, Dr. Lefors, who had supervised Plaintiff's treatment for over at least four years. This determination was based on (1) that Dr. Lefors provided too little information regarding Plaintiff's limitations; (2) that Dr. Lefors did not define the word "limited" when describing Plaintiff's residual abilities; and (3) that Mr. Vargas-Avila was clearly able to work despite Dr. Lefors' restrictions. This was in error.

"By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Where contradicted, the ALJ may reject the opinion of a treating physician for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When an ALJ fails to provide adequate reasons to reject a treating or examining doctor's opinion, the opinion may be credited as a matter of law. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ's reasons were not specific. First, the ALJ set forth no reasoning or analysis of the factors used to evaluate treating physician testimony. 20 C.F.R. § 404.1527. All of those factors cut in favor of crediting Dr. Lefors' opinion, and indeed, the overwhelming weight of the evidentiary record weighs heavily to support a finding of disability. The long relationship between Plaintiff and Dr. Lefors, and the dozens of entries in the record, refute any possible finding that Dr. Lefors provided too little information. Indeed, as the ALJ noted in regard to other treating professionals, Dr. Lefors' testimony should not be in terms of a vocational expert.

Defendant's citation to *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), is inapposite. There, the treating physician provided "conclusory and unsubstantiated" statements with "little objective evidence" of an impairment. *Id.* at 1113-14. This is far from the case here: Dr. Lefors provided medical documentation over the course of dozens of visits, and consistently noted Plaintiff's impairment. Furthermore, Dr. Lefors' opinion was detailed and sufficient enough to allow the vocational expert to find that someone with Plaintiff's limitations would not be able to find gainful employment. Tr. 70-73. Dr. Lefors also consistently instructed Plaintiff to avoid bending, lifting, twisting; to sit, stand, and move as needed; and to take breaks as needed. Tr. 463, 466, 764, 767, 804, 808, 811, 814, 817, 820, 824, 827, 831, 834, 840, 937. Plaintiff directly

questioned the vocational expert regarding what opportunities are available despite the "occasional" handling and fingering with a left hand. Tr. 70. There is no inconsistency between "limited use," as opined by Dr. Lefors, and the occasional usage defined by the vocational expert. And because the ALJ failed to provide specific and legitimate reasons to reject Dr. Lefors' opinion, Dr. Lefors' testimony regarding work breaks was improperly ignored in determining Plaintiff's ability to work.

The record also lacks substantial evidence that would allow a reasonable conclusion to discredit Dr. Lefors' opinion on the basis of Plaintiff's ability to work. The record shows only that Plaintiff was self-employed, and that his ability to work as a mechanic was sharply limited by his accident. This evidence can only allow the conclusion that Plaintiff's ability to do gainful work was limited. There is no inconsistency with a Plaintiff who attempts to provide for himself in a self-employed capacity, while following his treating doctor's limitations, while seeking benefits because injuries have effectively halved Plaintiff's ability to work in a competitive environment. Though determining inconsistencies in the evidence falls to the ALJ, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999), where the ALJ's reasons for rejecting medical evidence are insufficient, no deference is owed. *Garrison*, 759 F.3d at 1012. Where there is no inconsistency, there can be no reasonable rejection of the treating physician's opinion.

Given the above, Dr. Lefors has provided overwhelming evidence of Plaintiff's abilities; the ALJ's reasons to reject that evidence were insufficient; and because the vocational expert found that an applicant with Plaintiff's limitations would be unable to find gainful work, on remand a finding of disability would be required. Thus the credited-as-true doctrine applies, and Dr. Lefors' testimony is credited as true. *Garrison*, 759 F.3d at 1019.

//

*B. Dr. Proano.*

The ALJ rejected the medical opinion of treating psychiatrist Dr. Proano on the basis that (1) it applied only to Plaintiff's then-current condition when it was made on September, 2011; and (2) and it was inconsistent with Dr. Proano's own treatment notes. Tr. 34. Both reasons present error.

Dr. Proano's opinion was that Plaintiff suffered from severe and disabling limitations on relevant work abilities. The ALJ first rejected Dr. Proano's opinion by concluding that the opinion, in the form of a current assessment, should only apply to the date it was made, in September, 2011. Without any indication that the depression symptoms dated back to the time of Plaintiff's injury, the ALJ found there was no express description of limitations from August, 2008 to September, 2011, and thus afforded little weight to Dr. Proano.

This conclusion is unreasonable and not supported by substantial evidence. There is no reasonable way to read Dr. Proano's evaluation form and not conclude that the limitations he found applicable in 2011 do not apply earlier. At the time of the report, Dr. Proano found that Plaintiff suffered from "marked" and "extreme" restrictions in his abilities to interact with the public, supervisors, and co-workers, and to respond appropriately to usual work situations or changes in routine work settings. Tr. 633, question (2) & (3). At question (4), the form then explicitly notified that the *described limitations* are assumed to apply to current limitations only, and that if the treating doctor

> [has] sufficient information to form an opinion within [sic] reasonable degree of medical or psychological probability as to past limitations, on what date were *the limitations you found above first present?*"

Tr. 633-34 (emphasis added). Dr. Proano filled in a date of August 29, 2008, the date of Plaintiff's injury. Thus, the question and answer, read together, indicate

that the limitations are explicitly incorporated as starting on August 29, 2008. In an effort to insure his opinion was fully understood, Dr. Proano helpfully, though unnecessarily, added a comment that these limitations were "significant" and "disabling" from that date. Thus Dr. Proano explicitly opined that, with a reasonable degree of expert probability, Plaintiff suffered from the unambiguous limitations described at Tr. 633 in August, 2008. It is unreasonable for the ALJ to ignore Dr. Proano's opinion that the limitations existed since August, 2008 on the basis that Dr. Proano's comment narrows the scope of the disability, when it actually expands it. Indeed, the record supports the opposite, with further findings of depression in May, 2011, Tr. 601; January, 2010, Tr. 1005; and April, 2009, Tr. 724.

The general rule is that an ALJ's conclusions must be upheld when there is more than one "rational interpretation of the evidence." *Allen v. Heckler*, 749 F.2d 577 (9th Cir. 1982). Here there is only one rational interpretation: Dr. Proano unambiguously indicated that the limitations Plaintiff suffered dated back to August, 2008. The ALJ erred in rejecting Dr. Proano's opinion.

The ALJ also gave little weight to Dr. Proano's opinion on the basis that inconsistencies between Dr. Proano's opinion and treatment notes indicated that he was "advocating for the claimant's approval of benefits rather than providing an objective assessment of the claimant's functional capacity." Tr. 34. Specifically, the ALJ found that Dr. Proano referred to Plaintiff's depression as "mild" in May 2011, and enjoyed spending time with his son in July 2011. Tr. 34. This was in error.

With mental illnesses, cycles of improvement and decline are common. *Garrison*, 759 F.3d at 1017. "It is error" for an ALJ to select a few pieces of evidence of improvement, even over a period of months or years, and infer from them that a plaintiff is incapable of work. *Id.* In this case, a cycle of improvement and worsening is established. Tr. 608, 951, 989, 1070-71, 2074, 1076. The

overwhelming weight of the record indicates that the Plaintiff suffers from disabling depression. *See, e.g.*, Tr. 401, 606, 995, 1001, 1043. This record aligns with Dr. Proano's overall opinion. Though the ALJ need not address every piece of evidence in the record, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), substantial evidence must justify excluding a treating doctor's opinion. Here, a few instances of cyclical improvement, consistent with the diagnosis of the treating psychiatrist, are unable, as a matter of law, to outweigh the overwhelming evidence of disabling depression.

Given the above, Dr. Proano has provided overwhelming evidence of Plaintiff's abilities; the ALJ's reasons to reject that evidence were insufficient; and because the vocational expert found that an applicant with Plaintiff's limitations would be unable to find gainful work, on remand a finding of disability would be required. Thus the credited-as-true doctrine applies, and Dr. Proano's testimony is credited as true. *Garrison*, 759 F.3d at 1019.

*C. Dr. Early.*

In October, 2010 and September, 2011, Dr. Early performed consultative examinations of Plaintiff, reviewing Plaintiff's medical records and performing clinical interviews and mental status examinations. Tr. 409-19, 1054-64. He diagnosed Plaintiff with depressive disorder and pain disorder assigning a GAF Score of 45. Dr. Early found Plaintiff disabled due to his depression, and that the limited use of Plaintiff's left arm, combined with illiteracy in English, presented limited opportunities for Plaintiff to work. Tr. 409-19.

The ALJ rejected Dr. Early's October, 2010 opinion because Dr. Early made several references to Plaintiff's physical limitations as relating to vocational limitations, which is beyond Dr. Early's area of expertise. Tr. 33, 416-19. This was error. As Defendant argues, controlling weight is not given to medical opinion on issues reserved for the Commissioner, *McLeaod v. Astrue*, 640 F.3d 881, 8585 (9th Cir. 2011), and credibility determinations are reserved for the ALJ, *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). But here there is no credibility issue. Dr. Early explicitly offered a medical opinion, and that opinion is not substantively contradicted when accompanied by commentary on potential effects on Plaintiff's vocational abilities. Aspects of Dr. Early's opinion dealing with Plaintiff's medical condition, based on clinical evaluations, remain, regardless of tangential testimony. *See Garner v. Barnhart*, No. C 02-1048 SI, 2003 WL 22384764, at *3 (N.D. Cal. Oct. 8, 2003) (where medical expert contained both conclusion on ability to work and a proper medical opinion, it was error to reject it). The ALJ did not give legitimate or substantively evidenced reasons for rejecting Dr. Early's medical opinion; it should therefore have been considered. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings . . . .").

The ALJ also rejected Dr. Early's opinion on the basis that Plaintiff's subjective claims of pain were the only basis for his findings, as Dr. Early did not notice pain symptoms during examination. But Dr. Early's examination of other medical records, and clinical evaluations of Plaintiff, prevent the conclusion that his opinion is more heavily based on Plaintiff's subjective complaints rather than the medical evidence he relied upon. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Further, Dr. Early noted psychiatric issues preventing Plaintiff from working; such findings do not in any way discredit Dr. Early's other observations relating to the severity of Plaintiff's physical problems. A conclusion otherwise is not supported by substantial evidence. Tr. 33-34.

*D. Dr. Judd.*

The ALJ's rejection of Dr. Judd's 2007 examining opinion was improperly discounted. Tr. 36. Dr. Judd cannot be held incredible because he did not testify as to events which had not yet occurred. The fact that he could not review Plaintiff at a later time does not negatively impact the opinion he was able to offer, and is not

a legitimate reason to discount his opinion; the fact that he reviewed subsequent documentation can only buttress Dr. Judd's credibility.

Additionally, Plaintiff's attempt to return to work for ten days in August, 2008 does not create a legitimate claim that there is a discrepancy between Dr. Judd's opinion and Plaintiff's submitted work history. As discussed elsewhere in this opinion, Plaintiff's attempt to work as a part-time mechanic, while accommodating his own limitations, does not present legitimate gainful employment, and should fairly reflect the conclusion that Plaintiff's limitations halved his ability to work.

Finally, Dr. Judd was not required to provide data in terms of specific work tasks; the failure to evaluate Dr. Judd on the required basis of 20 C.F.R. § 404.1527, precluded discrediting his opinion. According to the doctrine of crediting as true by law, Dr. Judd's opinion is credited as true.

*E. Dr. Stevick.*

Dr. Stevick, a consulting doctor, delivered an opinion in September, 2011. He concluded that Plaintiff is limited to sedentary work, can lift ten pounds frequently, and can handle or finger with his left arm occasionally. Tr. 83. The ALJ rejected Dr. Stevick's opinion, and instead relied on the opinion of Dr. Norman Staley, another non-examining state consultant. Tr. 32; 90-104. The ALJ afforded little weight to this opinion, concluding that Dr. Stevick did not review the entire record, that he did not find another opinion in the record, and that the other state consultant, Dr. Staley, saw more of the record.

The record indicates that Dr. Staley did review some evidence regarding Plaintiff's upper extremity injuries. Tr. 96. Additionally, although the record indicates that Dr. Stevick received the reports from Dr. Seltzer and Dr. Kamath, Tr. 79, Dr. Stevick, in his own words, did not review them, Tr. 86, and the ALJ concluded as such from reviewing the report. The ALJ thus had substantial evidence justifying the decision to afford little weight to Dr. Stevick's opinion.

Thus, a finding of disability under Guidelines Rule 201.17, 20 C.F.R. § 201, Pt. 404, Subpt. P, App'x. 2, is unwarranted. However, as discussed elsewhere in this order, the proper crediting of other medical opinion results in a finding of disabled for Plaintiff.

*2. Medical Evidence Regarding Plaintiff's 2006 Injury.*

The ALJ ruled that Plaintiff's 2006 car-accident injuries, including injuries to his head and various parts of the right side of Plaintiff's body, were not severe impairments under the disability analysis. Tr. 26-27.

An impairment is severe when it significantly limits a claimant's ability to work. 20 C.F.R. § 404.1520(c). The determination of a severe impairment is a *de minimis* screening device to eliminate fraudulent or frivolous disability claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). Only slight anomalies, with no more than "a minimal effect on an individual's ability to work," can be designated as not severe. SSR 85-82.

Plaintiff's 2006 injuries pass this low threshold. As discussed above, the ALJ erred in failing to attach weight to Dr. Lefors and Dr. Judd. Once their opinions are properly considered, they provide "medically acceptable clinical and laboratory diagnostic techniques" sufficient to find severe impairments. SSR 96-7p, at *2.

The testimony from these physicians indicate that Plaintiff's ability to work was cut in half by the head injury, despite Plaintiff's self-employment as a mechanic, where he could accommodate his own limitations. Tr. 471-72, 838 (Dr. Lefors); Tr. 1082 (Dr. Judd). This certainly indicates more than a minimal effect on the ability to work.

Plaintiff additionally suffered from ankle arthritis, as noted by the ALJ. Tr. 353. The ALJ discounted this injury on the basis that Plaintiff continued to work. However, as discussed above, it is erroneous to conclude from the bare fact that

Plaintiff did some work as a self-employed mechanic that there was no impact on his work; the evidentiary record, based on the medical opinion of treating physicians, indicates that Plaintiff's ability to work was halved.

The same is true regarding carpal tunnel syndrome. There is no legal authority holding that a plaintiff's own, subjective observations of his symptoms should override explicit medical evidence, in this case, an EMG test indicating carpal tunnel syndrome. The record can only establish that Plaintiff's hand injuries, including carpal tunnel, limited his work function.

The ALJ's findings regarding Plaintiff's 2006 injuries are not supported by substantial evidence. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). When the entire record is considered, Plaintiff's 2006 injuries are sufficient to clear the low standard set for severity. However, the issue remains whether Plaintiff was fully disabled as a result of these injuries on this date, or as a result of his injuries from August, 2008. As discussed below, in this case Plaintiff concedes an onset date of August 28, 2008, and the Court agrees with such a conclusion.

*3. Plaintiff's Credibility*.

The ALJ concluded that Plaintiff was not credible because he made several conflicting statements, which reduced his overall credibility. Tr. 30.

This Court is bound by Ninth Circuit precedent regarding the standard for evaluating Plaintiff's testimony, which has been held to be "specific, clear and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Later cases indicate that the above standard merely supplements the "clear and convincing standard," and the two are now read identically. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The Court also notes that the clear and specific elements are fully compatible with SSR 96-7p.

//

The ALJ's reasons to discredit Plaintiff's testimony fail to meet the specific, clear, and convincing standard. First, as addressed above, Plaintiff's attempt at self-employment as a part-time mechanic does not conflict with his allegation that he was unable to perform gainful activity, which generally means full-time work.[1] SSR 96-8p. Thus, this is not a convincing reason to find Plaintiff incredible.

Next, the ALJ concluded that Plaintiff was incredible due to inconsistencies between his function/disability reports and his testimony. Tr. 30-31. However, this reason falls well below the convincing standard, because there is no direct conflict between citing his psychological and physical symptoms. Plaintiff's testimony in regards to hand limitations, including carpal tunnel syndrome, are fully supported by the record, Tr. 256, 434-82, 637, and Plaintiff testified as such. Additionally, inconsistencies between Plaintiff's descriptions of symptoms are resolved once treating physician opinions are properly considered.

The ALJ further discredited Plaintiff's testimony on the basis that Plaintiff's prognosis improved with treatment. Tr. 32; Exhibit 17F. However, the overall record presents a clear case that Plaintiff's psychiatric symptoms fluctuated over time. The citation of a few instances of milder depression, or optimism over future treatment, cannot provide a clear and convincing reason to overcome the bulk of the evidentiary record, which indicates limitations based on Plaintiff's psychiatric symptoms. Tr. 632-34, 1048. Because the few optimistic examples do not represent the broader development of the record, it was error to reject Plaintiff's testimony on this basis. *Garrison*, 759 F.3d at 1018.

The ALJ concluded the decision to reject Plaintiff's testimony on the basis that Dr. Montgomery, Dr. Seltzer, and Dr. Kamath, who conducted examinations relating to worker's compensation claims, expressed concerns over malingering. Tr. 32; 488, 505. Exaggerations on the part of the claimant may form a basis for

[1] Furthermore, the record establishes Plaintiff did not work as a full-time mechanic continuously, and that Plaintiff reported when he began part-time work. Tr. 227.

rejecting subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). But the non-examining conclusions of medical professionals with an incentive to deny worker's compensation claims, and who conducted "no psychological testing or depression scales," Tr. 999, cannot overcome the unequivocal testimony of multiple treating physicians. Dr. Proano, Dr. Early, and Dr. Kopp (examining) found no evidence of malingering. Tr. 416, 443, 999. Weighing these two beliefs can only lead the Court to conclude that there is no clear and convincing support to find Plaintiff's claims incredible. Per *Garrison*, 759 F.3d 1019-20, Plaintiff's testimony is credited as a matter of law.

### *Conclusion*

Here, the ALJ erroneously rejected medical opinion evidence and Plaintiff's symptom testimony; if this evidence had been properly credited, Plaintiff would have been found disabled. A review of the record as a whole, including the testimony of the vocational expert in concert with the properly-credited opinion of the treating physicians, creates no legitimate doubt that Plaintiff is disabled within the meaning of the Social Security Act. Plaintiff allows that if the only issue for resolution is the alleged onset date, he requests the latter date, of August 28, 2008. The Court agrees with such a conclusion. Further administrative proceedings will not be useful, and upon Plaintiff's concession, there are no outstanding issues to consider. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits. *Garrison*, 759 F.3d at 1019-20.

//

//

//

//

//

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** for an award of benefits, with a disability onset date of August 28, 2008.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 25th day of February, 2016.



Stanley A. Bastian
United States District Judge